IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMBULANCE ASSOCIATION OF PENNSYLVANIA, *et al.*, | ) ) ) | Civil Action No. 10-202 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge David S. Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| HIGHMARK INC., *et al.*, | ) ) | |
| Defendants. | ) | Re: ECF No. 51 |

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants at ECF No. 51 be granted, and that Plaintiffs' Amended Complaint at ECF No. 45 be dismissed with prejudice.

II.    REPORT

  A.  The Amended Complaint

Plaintiffs herein are Ambulance Association of Pennsylvania; City of Pittsburgh, Bureau of Emergency Medical Services; Monessen Ambulance Service, d/b/a/ Mon Valley Emergency Medical Services; Robinson EMS; Goodwill Hose Company Ambulance Association; Lancaster EMS Association; United Hook & Ladder Co. #33, f/k/a New Oxford Community Fire Company; Penn Township Volunteer Emergency Services, Inc.; Tremont Area Ambulance Association; Valley Ambulance Authority; Yoe Fire Company Ambulance Service, Inc.;

Northwest EMS, Inc.; The Nanticoke Fire Department Community Ambulance; Susquehanna Valley Emergency Medical Services; Burholme First Aid Corps; Pennsylvania Medical Transport, Inc.; and Lackawanna Ambulance Inc. (collectively "Plaintiffs").

Defendants herein are Highmark, Inc., d/b/a/ Highmark Blue Cross Blue Shield and Highmark Blue Shield; Keystone Health Plan West, Inc., d/b/a Keystone Health Plan and/or Keystone Blue; Capital Blue Cross; Keystone Health Plan Central, Inc.; Independence Blue Cross; Hospital Service Association of Northeastern Pennsylvania, d/b/a Blue Cross of Northeastern Pennsylvania; and First Priority Life Insurance, Inc., d/b/a First Priority Life (collectively "Defendants"). Defendants are health insurance companies, health maintenance organizations, hospital plan corporations, and/or managed care organizations that provide health care benefits to beneficiaries within the Commonwealth of Pennsylvania.

Each of the Plaintiff Ambulance Companies provides emergency ambulance transportation services within Pennsylvania and provides or has provided services to beneficiaries of one or more of the Defendants' health insurance products. These services have been provided in the absence of a contract with one or more of the Defendants, that is, when the Plaintiffs were "out-of-network" or "non-contracted" providers [hereinafter referred to as "non-contract" or "non-participating"]. "The Representative Ambulance Companies bring this action on behalf of themselves and all other ambulance service providers who have provided emergency ambulance transportation services to enrollees of the Defendants' health insurance products and who have been subject to Defendants' practice of paying enrollees rather than providers." (Amended Complaint, ECF No. 45 at ¶ 53.) Plaintiffs state that they are required by 28 Pa. Code § 1005.10(e) (4), to respond to calls for emergency assistance when dispatched to do so. Accordingly, allege Plaintiffs, they are legally obligated to provide, and have in fact

provided, emergency services to Defendants' enrollees at times when they were not parties to contracts with the Defendants. Plaintiffs further aver that "[i]n the absence of a contract, and in keeping with their standard practice and the normal practice in the industry, the [Plaintiffs] have submitted claims to, or billed, the Defendants for the services that the [Plaintiffs] have provided to the Defendants' enrollees." (Amended Complaint, ECF No. 45 at ¶ 60.) Defendants then direct payment to their enrollees, rather than to the non-contract ambulance companies and billing entities. Plaintiffs further aver that Defendants know, because they have been advised by Plaintiffs, that the enrollees routinely do not forward the payment on to the ambulance companies for the emergency services provided to the enrollee. Plaintiffs aver that this practice of paying the enrollee directly is used "as leverage to exert economic pressure and thereby force, or attempt to force, the [Plaintiffs] to enter into contracts of adhesion at steeply-discounted rates set by the Defendants for their economic benefit and profit." (Amended Complaint, ECF No. 45 at ¶ 84.) Plaintiffs further aver that as a result of Defendants' direct payments to their enrollees for emergency services, Plaintiffs have been unable to collect millions of dollars for the services they render to Defendants' enrollees.

Plaintiffs' Amended Complaint contains five (5) counts. Count I is for Declaratory Judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. In Count I, Plaintiffs seek a declaration that Defendants' direct payment to the enrollee for emergency services rendered by the non-contract Plaintiffs is unlawful in Pennsylvania under Act 68[1] and the implementing regulations. Plaintiffs continue that "a declaration of the Defendants' unlawful and illegal conduct under Act 68 and its implementing regulations is a necessary element of the RICO claims pled herein that rest on violations of the Hobbs Act as the necessary predicate acts." (Amended Complaint, ECF No. 45 at ¶ 133.) Hence, Plaintiffs conclude that "[a] Direct

---
[1] 40 Pa. Stat. §§ 991.2101-991.2193.

Pay Declaration from this Court will lay the foundation for the Representative Ambulance Companies' RICO claims, confirming that Act 68 provides ambulance companies with a pre-existing right to direct payment for services rendered." (Amended Complaint, ECF No. 45 at ¶ 136.) Likewise, Plaintiffs' aver that a Direct Pay Declaration allows them to seek unjust enrichment and/or conversion damages, including but not limited to punitive damages, arising from Defendants' failure to directly pay Plaintiffs.

Counts II and III contain Plaintiffs' civil RICO claims. First, Plaintiffs invoke 18 U.S.C. § 1962(c), and allege the following:

> The Defendants have engaged in a pattern of attempted and actual extortion, by purposefully ignoring and/or misconstruing applicable statutory and regulatory authority and using the practice and threat of sending the providers' money to enrollees as a means to exert economic pressure and coerce Non-Contract Ambulance Companies into entering into provider contracts at rates that do not adequately compensate the providers for their emergency medical services.

(Amended Complaint, ECF No. 45 at ¶ 150.) Again, Plaintiffs allege that they are entitled to direct payment of their claims from Defendants pursuant to Act 68 and the implementing regulations. Plaintiffs aver specific examples of the above as it relates to certain Plaintiffs' interactions with certain Defendants. (Amended Complaint, ECF No. 45 at ¶¶ 156-224.) In Count III, Plaintiffs aver a RICO conspiracy pursuant to 18 U.S.C. § 1962(d) as follows:

> [T]he Defendants have knowingly and willfully agreed and conspired to cooperate in the practice of making payments to enrollees, rather than Non-Contract Ambulance Companies, with the known goal of coercing the Non-Contract Ambulance Companies to forfeit their statutory and regulatory rights to direct payment and to enter contracts of adhesion with the Defendants at discounted rates unilaterally set by the Defendants, which conduct constitutes the predicate acts of extortion and attempted extortion.

(Amended Complaint, ECF No. 45 at ¶ 236.)  Plaintiffs continue that Defendants are aware that their acts are part of a pattern of conduct, or a practice in the Enterprise, and they have taken steps in furtherance of the conspiracy and the Enterprise, committing at least two predicate acts of extortion or attempted extortion in furtherance of the conspiracy.

In Counts IV and V of the Amended Complaint, Plaintiffs aver state common law claims for unjust enrichment and conversion, respectively.

B. <u>Legal Standard</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, in light of *Iqbal*, the *Fowler* court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In support of their Motion to Dismiss the Amended Complaint, Defendants argue the following: 1) Act 68 and its implementing regulations do not require Defendants to make direct payment to Plaintiff ambulance companies for services rendered to Defendants' enrollees despite the absence of any contractual relationships between the Plaintiffs and Defendants; 2) if such right of direct payment does exist, the Pennsylvania state Superior Court has held that Act 68 does not provide a private right of action, but that the regulations promulgated thereunder establish the exclusive administrative remedy; 3) Plaintiffs' RICO claim is preempted under the federal McCarran-Ferguson Act; 4) Plaintiffs' RICO claims must also be dismissed because the Amended Complaint fails to set forth sufficient facts to show a pattern of racketeering activity, proximate causation, a RICO conspiracy or a RICO enterprise; and 5) Plaintiffs' common law unjust enrichment and conversion claims fail due to their dependence on Plaintiffs' flawed Act 68 claim, as well as their own factual and legal shortcomings. Defendants conclude their arguments by noting that the Court should decline to exercise supplemental jurisdiction over the state law claims, and should deny further amendments to the pleadings as futile.

In response to Defendants' Motion to Dismiss, Plaintiffs argue the following: 1) Act 68 does require Defendants to make direct payment to Plaintiff ambulance companies because one of the implementing regulations for Act 68 provides for such direct payment, even in the absence of any contractual relationships between Plaintiffs and Defendants; 2) the United States District Court for the Eastern District of Pennsylvania has held that Act 68 does provide for a private right of action; 3) Plaintiffs' RICO claims are not reverse preempted under the McCarran-Ferguson Act; 4) Plaintiffs have alleged a plausible pattern of extortion cognizable under the Hobbs Act; 5) Plaintiffs have suffered damages cognizable under RICO as a result of

**7**

Defendants' violations of the Hobbs Act; 6) Plaintiffs have sufficiently averred a RICO conspiracy as a matter of law; 7) Plaintiffs have averred an unjust enrichment claim and a conversion claim as a matter of law, and the Court should exercise supplemental jurisdiction over these claims. Finally, Plaintiffs argue, in the alternative, that they should be granted leave to amend their complaint in the event that the Court determines that they are unable to state a RICO claim based on the Hobbs Act.

Defendants requested Oral Argument, and on February 24, 2011, the Court heard Oral Argument on all issues except for the state law claims of unjust enrichment and conversion.

C. <u>Analysis</u>

<u>ACT 68 AND ITS IMPLEMENTING REGULATION DO NOT REQUIRE MANAGED CARE PLANS TO PAY NON-PARTICIPATING AMBULANCE PROVIDERS DIRECTLY</u>

Defendants' initial arguments concern Count I of the Amended Complaint. In Count I, Plaintiffs seek a declaration that Defendants' direct payment to the enrollee of a managed care plan for emergency services rendered by non-contract Plaintiffs is unlawful in Pennsylvania under Act 68 and its implementing regulations. Defendants contend that Plaintiffs' interpretation of Act 68 is legally flawed and therefore, Count I of the Amended Complaint must be dismissed as a matter of law. Plaintiffs respond that the plain language of the statute and its implementing regulation require payment directly to the non-contract Plaintiffs.

Act 68 of 1998, the Quality Health Care Accountability and Protection Act of 1998, commonly referred to as the Managed Care Bill of Rights, was enacted in June, 1998 and became effective on January 1, 1999. 40 Pa. Stat. §§ 991.2101-991.2193 ("the Act" or "Act 68"). The Act provides patients and their physicians with a number of new enforceable rights in their dealings with managed care plans. One of these new enforceable rights is the statutory

provision at issue in this case. 40 Pa. Stat. § 991.2166 provides for the prompt payment of claims as follows:

> **§ 991.2166. Prompt payment of claims**
>
> (a) A licensed insurer or a managed care plan[2] shall pay a clean claim[3] submitted by a health care provider[4] within forty-five (45) days of receipt of the clean claim.
> (b) If a licensed insurer or a managed care plan fails to remit the payment as provided under subsection (a), interest at ten per centum (10%) per annum shall be added to the amount owed on the clean claim. Interest shall be calculated beginning the day after the required payment date and ending on the date the claim is paid. The licensed insurer or managed care plan shall not be required to pay any interest calculated to be less than two ($2) dollars.

40 Pa. Stat. § 991.2166 (footnotes added).

The Pennsylvania Department of Health ("DOH") and the Pennsylvania Insurance Department ("PID") are charged with ensuring compliance with Act 68. 40 Pa. Stat. § 991.2181 (d). The DOH and PID "shall promulgate such regulations as may be necessary to carry out the

---

[2] "Managed care plan" is defined in relevant part as follows:

> A health care plan that uses a gatekeeper to manage the utilization of health care services; integrates the financing and delivery of health care services to enrollees by arrangements with health care providers selected to participate on the basis of specific standards; and provides financial incentives for enrollees to use the participating health care providers in accordance with procedures established by the plan.

40 Pa. Stat. § 991.2102.

[3] "Clean claim" is defined in relevant part as "[a] claim for payment for a health care service which has no defect or impropriety. A defect or impropriety shall include lack of required substantiating documentation or a particular circumstance requiring special treatment which prevents timely payment from being made on the claim." 40 Pa. Stat. § 991.2102.

[4] "Health care provider" is defined as follows:

> A licensed hospital or health care facility, medical equipment supplier or person who is licensed, certified or otherwise regulated to provide health care services under the laws of this Commonwealth, including a physician, podiatrist, optometrist, psychologist, physical therapist, certified nurse practitioner, registered nurse, nurse midwife, physician's assistant, chiropractor, dentist pharmacist or an individual accredited or certified to provide behavioral health services.

40 Pa. Stat. § 991.2102.

provisions of [Act 68]."[5]  40 Pa. Stat. § 991.2182 (e).  To this end, the regulations at 31 Pa. Code § 154.1-154.18 were promulgated to "govern[] quality health care accountability and protection and appl[y] to managed care plans and licensed insurers subject to [Act 68]."  31 Pa. Code § 154.1(a).  Likewise, the regulations provide that the DOH and PID "both have regulatory authority under the act."[6]  31 Pa. Code § 154.1(a).  Plaintiffs rely solely on a regulation entitled "Prompt payment" in support of their claim for declaratory judgment.  The "Prompt payment" regulation provides, in part, as follows:

> **§ 154.18.  Prompt payment.**
>
> (a)  Licensed insurers and managed care plans shall pay clean claims and the uncontested portions of a contested claim under subsection (d) submitted by a health care provider for services provided on or after January 1, 1999, within 45 days of the licensed insurer's or managed care plan's receipt of the claim from the health care provider.  The prompt payment provision applies only to claims submitted under health insurance policies, excluding areas such as automobile and worker's compensation policies.
> (b)  For purposes of prompt payment, a claim shall be deemed to have been "paid" upon one of the following:
>   (1)  A check is mailed by the licensed insurer or managed care plan to the health care provider.
>   (2)  An electronic transfer of funds is made from the licensed insurer or managed care plan to the health care provider.
> (c) Interest due to a health care provider on a clean claim shall be calculated and paid by the licensed insurer or managed care plan to the health care provider and shall be added to the amount owed on the clean claim.  The interest shall be paid within 30 days of the payment of the claim.  Interest owed of less than $2 on a single claim does not have to be paid by the licensed insurer or managed care plan.  Interest can be paid on the same check as the claim payment or on a separate check.

---

[5] As long as the regulations are within the power granted to the DOH and PID by the state legislature, issued pursuant to proper procedure, and are reasonable, the regulations are as binding upon the Court as a statute. *Popowsky v. Pa. Pub. Util. Comm'n*, 910 A.2d 38, 53 (Pa. 2006).  The parties do not dispute the validity of the regulations.

[6] The PID also regulates and preapproves contracts between healthcare providers and managed care plans wherein providers agree to discounted rates in exchange for direct payment.  *See* 28 Pa. Code § 9.722 (managed care organizations); 40 Pa. Cons. Stat. Ann. § 6124(a) (hospital plan corporations); 40 Pa. Stat. § 1560(c) (health maintenance organizations); 40 Pa. Stat. § 3809(a) (healthcare insurers in general).

> If the licensed insurer or managed care plan combines interest payments for more than one late clean claim, the check shall include information listing each claim covered by the check and the specific amount of interest being paid for each claim.

> . . .

31 Pa. Code § 154.18.

The Defendants' first argument in support of their Motion to Dismiss requires interpretation of the Act, which is a question of law. *Ins. Fed. of Pa., Inc. v. Pa. Ins. Dep't,* 970 A.2d 1108, 1114 (Pa. 2009) (citing *Tritt v. Cortes*, 851 A.2d 903, 905 (Pa. 2004)). The Court must employ the principles of statutory interpretation as set forth in the Statutory Construction Act, 1 Pa. Cons. Stat. Ann. §§ 1501 *et seq.* The Court's most important interpretative task is to give effect to the intent of Pennsylvania's General Assembly in enacting the legislation in issue. 1 Pa. Cons. Stat. Ann. § 1921 (a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Cons. Stat. Ann. § 1921 (b). *See Pa. Office of Admin. v. Pa. Labor Relations Bd.,* 916 A.2d 541, 547-48 (Pa. 2007) ("The best indication of legislative intent is the language used in the statute."); *Pa. Fin. Responsibility Assigned Claims Plan v. English*, 664 A.2d 84, 87 (Pa. 1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). The Court will "look beyond the language employed by the General Assembly only when the words are not explicit." *Pa. Office of Admin.*, 916 A.2d at 548 (citing Pa. Cons. Stat. Ann. § 1921(c)). Hence, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to

include." *Commonwealth v. Rieck Inv. Corp.*, 213 A.2d 277, 282 (Pa. 1965) (citations omitted), *cited in, Spectrum Arena Ltd. P'ship v. Pennsylvania.*, 983 A.2d 641, 651-52 (Pa. 2009).

Applying these principles of statutory interpretation to the case at bar, the plain language of 40 Pa. Stat. § 991.2166 could not be more clear.[7] Subsection (a) clearly requires payment by a licensed insurer or a managed care plan of a clean claim submitted by a health care provider within 45 days of receipt of the claim. Subsection (a) makes no mention of to whom the claim is to be paid. The Court is without authority to insert words into a statutory provision where the legislature has failed to supply them. *See Key Sav. & Loan Ass'n v. Louis John, Inc.*, 549 A.2d 988, 991 (Pa. Super. 1988); 1 Pa. Con. Stat. Ann. § 1921 (b). Likewise, subsection (b) makes no mention of to whom payment is to be made. Instead, subsection (b) concerns the interest penalty to be incurred by the managed care plan or a licensed insurer when payment on a clean claim is not forthcoming. That is, interest at 10% per annum is to be added to the amount of the clean claim; interest is to be calculated beginning the day after the required payment date, and ending on the date the claim is paid.

Applying the same principles of statutory interpretation to the companion regulation, the plain language of 31 Pa. Code § 154.18 could not be more clear. Entitled "Prompt payment," the

---

[7] Defendants focus a substantial part of their argument on the doctrine of *in pari materia*, including an analysis of §§ 991.2111(4) of Act 68 (requiring managed care plans to provide reasonable payment or reimbursement for emergency services), 991. 2136(a)(4) (requiring managed care plans to provide enrollees with "[a]n explanation of an enrollee's financial responsibility for payment when a health care service is provided by a nonparticipating health care provider. . . . ."), 991.2136(a)(9)(iii) (requiring managed care plans to provide a description of "[t]he enrollee's financial and other responsibilities regarding emergency services, including the receipt of these services outside the managed care plan's service area."), 40 Pa. Stat. § 3042 ( insurers shall reimburse an insured or provider for medically necessary services provided in a hospital emergency facility), and 31 Pa. Code §§ 154.14(b) (requiring managed care plans to "pay all reasonably necessary costs for enrollees meeting the prudent layperson definition of emergency services provided during the period of the emergency . . . ."), 154.16(h)(4) (requiring managed care plans to provide a description of "[t]he enrollee's financial and other responsibilities regarding emergency services, including the receipt of these services outside the managed care plan's service area."), and how these provisions support the argument that non-contract emergency providers are not entitled to direct payment from managed care plans. It is unnecessary for the Court to address these arguments, however, because of the clear and unambiguous language of the prompt payment provisions at § 991.2166 and its companion regulation. *Oliver v. Pittsburgh*, 11 A.3d 960, 965 (Pa. January 28, 2011).

regulation describes when the clean claim is to be considered paid for purposes of concluding the interest calculation. First, the plain words contained in the titles of both the statute and companion regulation indicate that both provisions are concerned with the temporal or timely aspect of payment. *See* 1 Pa. Cons. Stat. Ann. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage . . . ."). The regulation, in subsection (a), reiterates the provision in 40 Pa. Stat. § 991.2166 requiring payment by a licensed insurer or a managed care plan of a clean claim submitted by a health care provider within 45 days of receipt of the claim. 31 Pa. Code § 154.18 (a). This temporal theme is reinforced in the plain language of both the statute and the regulation by imposing a consequence, the interest penalty, when payment is not "prompt." The statute describes the rate of interest to be added and the interim of time for which interest is to be calculated.[8] The regulation, at Subsection (b), further refines this interim of time, which had been left indefinite in the statute. The regulation describes when "*a claim shall be deemed to have been 'paid'*" for purposes of, *inter alia,* concluding the interest calculation.[9] 31 Pa. Code § 154.18(b) (emphasis added). In reading subsection (b) of the regulation, "[g]eneral words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa. Cons. Stat. Ann. § 1903(b). Consequently, the introductory phrase of Subsection (b) of the regulation, "For purposes of prompt payment," restricts the general language that follows.

Therefore, Plaintiff s' efforts to isolate a phrase in the regulation to support the argument that payment must be made to them directly fails as a matter of law. 31 Pa. Code § 154.18 contains nine (9) subsections, all relating to the temporal aspect of payment and the attendant

---

[8] "Interest shall be calculated beginning the day after the required payment date and ending on the date the claim is paid." 40 Pa. Stat. § 991.2166 (b).
[9] The plain language of the regulation also makes clear that another reason for defining when "a claim shall be deemed to have been 'paid'," concerns when the interest payment is due: "The interest shall be paid within 30 days of the payment of the claim." 31 Pa. Code § 154.18(c).

**13**

interest consequences if payment is not "prompt." Yet, Plaintiffs isolate Subsection (b) of the regulation which provides as follows:

> (b) For purposes of prompt payment, a claim shall be deemed to have been "paid" upon one of the following:
> (1) A check is mailed by the licensed insurer or managed care plan to the health care provider.
> (2) An electronic transfer of funds is made from the licensed insurer or managed care plan to the health care provider.

31 Pa. Code § 154.18 (b). The non-contract Plaintiffs excise the words "to the health care provider" from Subsection (b) (1) & (2) and insist that these words require that payment must be made directly to them instead of to the enrollees whenever non-contract ambulance companies provide a health care service to an enrollee. The plain language of the regulation simply cannot support Plaintiffs' distorted interpretation. *See* 1 Pa. Cons. Stat. Ann. § 1921 (a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). The plain language of the regulation does not require managed care plans to pay non-contract providers directly, and the Court may not add this requirement when the Pennsylvania legislature "did not see fit" to include it.[10] *Rieck Inv. Corp.*, 213 A.2d at 282.

Therefore, accepting all factual averments in Count I of Plaintiffs' First Amended Complaint as true, Plaintiffs, as a matter of law, have failed to state a plausible claim for relief. Defendants' Motion to Dismiss Count I of the First Amended Complaint should be granted.

---

[10] During the 30-day public comment period regarding the Act and the regulations promulgated thereunder, one commentator requested a regulation that would require direct payment to participating and nonparticipating ambulance service providers for services rendered. The DOH's response was that it "does not have the authority to address the issue of whether the provider or patient should receive payment from the [managed care] plan." 31 *Pa. Bulletin* 3068 (June 9, 2001). The DOH emphasized that it was working and will continue to work with the PID "to ensure an effective and efficient application of [Act 68] and its implementing regulations." 31 *Pa. Bulletin* 3043 (June 9, 2001).

## REMAINING COUNTS OF THE AMENDED COMPLAINT

Plaintiffs have asserted claims against Defendants under 18 U.S.C. §§ 1962 (c) and (d). The RICO statute provides the following:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964 (c). In turn, § 1962 (c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." Section 1962(d) prohibits conspiring to violate one of the other three RICO subsections.

In order to establish a violation of § 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). The term "racketeering activity" is defined in a list of various state and federal offenses set forth at 18 U.S.C. § 1961 (the "predicate acts"), and includes the Hobbs Act at § 1951. A "pattern of racketeering activity" is established with proof of the commission of at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5).

18 U.S.C. § 1951 provides in relevant part as follows:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
> (b) As used in this section—
> . . .

**15**

> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . .
> (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951.

The Plaintiffs conceded in oral argument, as well as in the Amended Complaint and responsive brief, that a declaration from the Court that Defendants' direct payment to enrollees for emergency services rendered by non-contract Plaintiffs is unlawful under Act 68 "is a necessary element of the RICO claims pled herein that rest on violation of the Hobbs Act as the necessary predicate acts." Amended Complaint, ECF No. 45 at ¶ 133; *see also* Amended Complaint, ECF No. 45 at ¶ 136 ("A Direct Pay Declaration from this Court will lay the foundation for the Representative Ambulance Companies' RICO claims, confirming that Act 68 provides ambulance companies with a pre-existing right to direct payment for services rendered."); Plaintiffs' Brief in Response to Defendants' Joint Motion to Dismiss the First Amended Complaint, ECF No. 56 at 37 & n.14. Likewise, any attempt by Plaintiffs to amend the First Amended Complaint to allege predicate acts based on the Pennsylvania extortion statute would be futile. *See* 18 Pa. Cons. Stat. § 3923(a)(7) (intentionally obtaining or withholding property of another); 18 U.S.C. § 1961 (1)(A) (defining "racketeering activity" as including "any act or threat involving . . . extortion . . . which is chargeable under State Law . . . ."). *See also Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (district court need not permit curative amendment if amendment futile).

Consequently, because the Court is recommending that Count I be dismissed with prejudice, and because Plaintiffs have conceded that their RICO claims fail without a declaration from the Court that Defendants have violated Act 68, Plaintiffs are unable to show a plausible claim for relief pursuant to RICO. Hence, Defendants' Motion to Dismiss Counts II and III of the Amended Complaint should be granted.

Further, 28 U.S.C. § 1367(c) provides that the district courts may refuse to exercise its supplemental jurisdiction when a district court has dismissed all claims over which it has original jurisdiction. Consequently, because the Court will grant Defendants' Motion to Dismiss the above claims, including the RICO claims over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' unjust enrichment and conversion claims.

III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss filed by Defendants at ECF No. 51 be granted, and that Plaintiffs' Amended Complaint at ECF No. 45 be dismissed with prejudice.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and

recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: March 15, 2011

BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc: All Counsel of Record
 Via Electronic Mail