# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMBULANCE ASSOCIATION OF PENNSYLVANIA,** *et al.*, | )<br>)<br>) 2:10cv202 |
| Plaintiffs, | ) Electronic Filing<br>) |
| v. | ) Judge Cercone<br>) Chief Magistrate Judge Lenihan |
| **HIGHMARK INC.**, *et al.*, | )<br>) |
| Defendants. | ) |

## MEMORANDUM ORDER

AND NOW, this 7th day of June, 2011, after de novo review of the record and upon due consideration of [63] the magistrate judge's report and recommendation filed on March 15, 2011, [65] plaintiffs' objections thereto and [66] defendants' response in opposition, IT IS ORDERED that [51] defendants' motion to dismiss be, and the same hereby is, granted. The report and recommendation as modified herein is adopted as the opinion of the court.

Plaintiffs' objections are without merit. An essential lynchpin to each of plaintiffs' claims is that as "health care providers" within the meaning of Pennsylvania's Quality Health Care Accountability and Protection Act ("Act 68"), plaintiffs have submitted "clean claims" to defendants and are entitled to receive direct payment from them on those claims as mandated by section 991.2166. See 40 P.S. § 991.2166(a); Plaintiffs' Objections (Doc. No. 65) at 4 ("Plaintiffs, therefore, initiated this action in order to obtain a declaration that, pursuant to Act 68 and its implementing regulations, 'the Non-Contracting Ambulance Companies have the right to receive direct payment from . . . Defendants for services rendered within forty-five (45) days of submitting a . . . claim . . . .'"). Plaintiffs' quest for relief lacks sufficient foundation because plaintiffs legally are incapable of submitting clean claims under Act 68 and the statute mandates direct payment only to those health care providers who are capable of doing so. Consequently, the right they seek is beyond the mandates established by Act 68; its omission is part of the enacted legislative scheme; and the lack of such a right is fatal to plaintiffs' position.

We agree with the magistrate judge's determination that "the plain language of the regulation does not require managed care plans to pay non-contract providers directly, and the Court may not add this requirement when the Pennsylvania legislature 'did not see fit' to include it." Report and Recommendation (Doc. No. 63) at 14. From our perspective, this proposition is accurate because the regulation tracks the statutory scheme, and when properly interpreted under the applicable rules of statutory construction that scheme excludes "non-participating" or "non-contracting" health care providers from the class of health care providers who/that are capable of submitting a clean claim.[1] Thus, plaintiffs have no right to receive direct or timely payment for emergency or other medical services under Act 68.

The guiding principles of statutory construction are set forth in the Report and Recommendation. See Report and Recommendation at 11-12. As aptly noted therein, "[t]he best indication of legislative intent is the language used in the statute." Id. (quoting Pa. Office of Admin. V. Pa. Labor Relations Bd., 916 A.2d 541, 547-48 (Pa. 2007)). And where that language is clear and unambiguous, that intent must be derived from the text of the statute and judicial inquiry is at an end. Id. (quoting Pa. Fin. Responsibility Assigned Claims v. English, 664 A.2d 84, 87 (Pa. 1995)).

Moreover, "in construing the language of a statute, the court must assume that the legislature intended that every word of the statute would have effect." Crusco v. Insurance Co. of North America, 437 A.2d 52, 53-54 (Pa. Super. 1981) (citing Commonwealth v. Driscoll, 401 A.2d 312 (Pa. 1979) and Lukus v. Westinghouse Electric Corporation, 419 A.2d 431 (Pa. Super. 1980)). "Furthermore, it is assumed that the legislature uses words in their standard, or accepted, sense." Id. (citing Commonwealth v. Ashford, 397 A.2d 420 (Pa. Super. 1979)). Application of

---

[1] Because the statutory scheme defines the class of health care providers who/that are capable of submitting a clean claim and the regulations entitle such providers to receive prompt payment, we cannot endorse the proposition that the Pennsylvania legislature did not identify "to whom the claim is to be paid."

2

these settled principles leads to the conclusion that plaintiffs are beyond the scope of the prompt payment mandate upon which they found their claims.

Act 68 mandates the prompt payment of "clean claims" by managed care plans and the accompanying regulations indicate that payment for timing purposes is deemed to have been made when the check is mailed or an electronic transfer of funds is made to the health care provider. 40 P.S. § 991.2166; 31 Pa. Code § 154.18. A "clean claim " is defined as "[a] claim for payment for a health care service which has no defect or impropriety." 40 P.S. 991.2102. A "health care service" is "[a]ny covered treatment … or other service … prescribed or otherwise provided or proposed to be provided by a health care provider to an enrollee *under a managed care plan contract*." Id. (emphasis added). A managed care plan is "[a] health care plan that uses a gatekeeper to manage the utilization of health care services; integrates the financing and delivery of health care services to enrollees by arrangements with health care providers selected to participate on the basis of specified standards; and provides financial incentives for enrollees to use the participating health care providers in accordance with procedures established by the plan." Id.

Plaintiffs meet the definition of "health care provider" in that they are a licensed to provide health care services under the laws of Pennsylvania. See 40 P.S. § 991.2102. Nevertheless, they are incapable of prescribing, providing or proposing to provide a "covered treatment [or] service . . . to an enrollee under a managed care plan contract." "Under" commonly is understood to mean in, below or beneath, or within or on the inside of something. THE OXFORD DICTIONARY AND THESAURUS, AMERICAN ED. (1996). To provide a covered treatment or service "under a managed care plan contract" plaintiffs would have to be participating health care providers who provide such services pursuant to a contract that is part of a managed care plan. Plaintiffs are non-participating health care providers and concede that they are out-of-network; they have no contract(s) with defendants. It follows that they are

3

beyond the scope of the prompt payment of claims provision. And it follows *a fortiori* that they cannot extrapolate from that mandate a right to direct payment from defendants.

The fatal flaw in plaintiffs' position is laid bare by their use of the "Emergency Services" as a means for placing themselves within the scope of the Act's provisions.[2] The legislature recognized the detrimental impact that Act 68 could have on the rendering of emergency services and provided for the payment of such services. The emergency services mandate of Act 68 obligates managed care plans to pay "all reasonably necessary costs associated with the emergency services provided during the period of emergency." 40 P.S. § 991.2116. It further provides that "[w]hen processing a reimbursement claim for emergency services, a managed care plan shall consider both the presenting symptoms and the services provided." Id. After stabilization and the elimination of risk of detriment from transport, an individual in a managed care plan can be transferred to a participating provider for continued care and treatment as necessary. Id.

Far from making treatment provided by an "emergency health care provider" a form of "covered treatment . . . or other services . . . provided or proposed to be provided by a health care provider to an enrollee under a managed care plan contract[,]" the emergency services mandate precludes managed care plans from forcing the terms of the plan on a non-participating emergency health care provider and obligates the managed care plan to pay "all reasonably necessary costs associated with the emergency services during the period of the emergency." Id. This clear distinction and carve-out of emergency services evidences a legislative directive as to when services by a non-participating health care provider cannot be denied on the grounds that they were not authorized, preapproved or otherwise within the scope of the plan. But only those reasonably necessary costs associated with the services provided to address the actual emergency are to be paid. And quite tellingly, those costs are to be evaluated and paid in conjunction with "processing a reimbursement claim for emergency services." Id. To "reimburse" is to repay one who has paid. THE OXFORD DICTIONARY AND THESAURUS, AMERICAN ED. (1996). As between

---

[2] The obligation to provide emergency services is imposed under Pennsylvania law at 28 Pa. Code § 1005.10(e)(4).

4

the parties involved in the procurement of emergency services, the enrollee and an emergency health care service provider, only the enrollee would be expected to pay an out-of-network health care service provider and seek to be "reimbursed" for the payment of services rendered by that provider. To read the language as permitting such a service provider to seek repayment for services for which it has never been paid would assign a bizarre and unnatural meaning to the words the legislature carefully chose to employ. This we are not at liberty to do.

The legislative scheme embodied in Act 68 evinces a clear distinction between the treatment of services rendered by participating and out-of-network health care providers. Health care providers capable of providing a covered treatment or service "under a managed care plan contract," i.e., participating providers, are entitled to prompt and direct payment when they submit a clean claim for payment. In contrast, enrollees are entitled to receive reimbursement for all reasonably necessary costs rendered by out-of-network health care providers for emergency services.

By definition plaintiffs are not capable of providing treatment or services under a managed care plan contract and thus are beyond the scope of the rights afforded to health care services providers participating in a managed care plan. The practice of out-of-network providers seeking direct payment from enrollees and the enrollees seeking "reimbursement" from the managed care plan was both contemplated and endorsed under Act 68's carve-out for emergency services. Legislative recognition of and an intent to sanction such a protocol in other areas where out-of-network health care service providers render health care services to enrollees of a managed care plan properly is ascribed under these circumstances. In other words, Act 68 does not provide plaintiffs with a right to direct payment and actually endorses defendants' practice of making direct payment to enrollees where covered or mandated services are rendered by an out-of-network provider. Consequently, defendants' motion to dismiss properly has been granted.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Court Judge

5

cc: Charles Kelly, Esquire
Kristin A. Lawson, Esquire
Jeremy Feinstein, Esquire
William J. Sheridan, Esquire
Joseph Friedman, Esquire
J. Alexander Hershey, Esquire
Stuart C. Gaul, Jr., Esquire
David L. Comerford, Esquire
James J. Griffith, Esquire
Katherine M. Katchen, Esquire
Paul T. McGurkin, Esquire
Paul K. Leary, Jr., Esquire
Peter M. Ryan, Esquire

Via: CM/ECF Electronic Filing